**Ben D. MAHAFFEY, Plaintiff,**

v.

**KANSAS BOARD OF REGENTS, et al., Defendants.**

**No. 81–1465.**

United States District Court, D. Kansas.

May 13, 1983.

Peggy A. McNeive, Topeka, Kan., for plaintiff.

Richard H. Seaton, University Atty., Manhattan, Kan., for defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Plaintiff, a faculty member at Kansas State University, claims in this lawsuit that defendants, the Kansas Board of Regents and various Kansas State University officials or faculty members, have infringed plaintiff's constitutionally guaranteed rights to freedom of speech, to due process, and to equal protection of the laws; plaintiff also asserts several pendent state law claims. The matter is now before the Court on defendants' motion for summary judgment; as explained below, that motion must be granted.

Plaintiff began teaching in the Kansas State University College of Agriculture in 1972; he was hired as an Assistant Professor in the Department of Horticulture and Forestry, and was promoted to Associate Professor in 1976, thereby acquiring academic tenure. In 1977, the College's administrative structure was reorganized, and plaintiff's teaching activities, which involved courses in the management of parks and recreation areas, were brought under the aegis of the Department of Forestry. At the time of this reorganization, plaintiff

proposed that the parks and recreation area management program be accredited separately, rather than incorporated into the Forestry Department, but his views were not acceded to. In subsequent years, plaintiff continued to advocate that his program be separated from the Forestry Department; he contends that this stance earned him the enmity of certain members of the department, and that this enmity was heightened when plaintiff, ostensibly for pedagogical purposes, publicized in his classes a student paper that unflatteringly portrayed certain administrative decisions taken within the department. Plaintiff alleges that in retaliation, defendant Gallaher, Forestry Department Head, gave plaintiff an unfairly negative performance evaluation for 1978–79, which in turn led to plaintiff's receiving no salary merit increase in 1979–80. Plaintiff filed a formal grievance over the evaluation and increase with the General Faculty Grievance Board, but received no relief. In subsequent years, plaintiff maintains that defendant further harassed him by continuing to give him unfairly negative evaluations and unjustifiably small merit salary increases, by removing him from positions as department teaching program leader and Chairman of the Natural Resource Management Curriculum Committee, by reducing him from a twelve month to a nine month appointment, by moving him to a smaller office, by terminating his exclusive control over three university-owned film projectors, and by placing an unjust written reprimand in his personnel file. Plaintiff again filed formal grievances over each of these instances of alleged harassment, and did as a result receive a heightened merit salary increase for 1981–82, but his grievances were otherwise unremedied.[1]

■ Plaintiff claims that he had constitutionally protected property interests in his administrative positions, in his salary increases, in his twelve month appointment, in his original office space, and in his con-

trol of the three film projectors. This claim must be rejected. As explained in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

The nature of a protected property interest was further elucidated in *Perry v. Sinderman,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972):

> A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

Plaintiff points to no statute, rule, regulation, or contractual term that reasonably could be read as providing him with an entitlement to a twelve month contract, a given merit salary increase, specific committee assignments, an office of any certain size, or control over specified items of audio-visual equipment, and it is worth noting that the General Faculty Grievance Board expressly rejected these claims of entitlement. The Court does not mean to suggest that the findings of that body are dispositive or irrebuttable, but under Rule 56(e) of the Federal Rules of Civil Procedure, plaintiff has the burden of raising facts that would support an inference that the board's conclusion was erroneous. Plaintiff's responses, to the limited extent that they exceed the parading of his unilateral expectations before the Court, are limited to vague statements as to the nature of the job he was hired to do; he argues in his brief that "there can be no greater basis for an expectancy that a position will continue than the one the plaintiff possesses, that is, he was hired to perform the very job responsibilities of which he was later deprived." If plaintiff's argument held sway,

---

1. The Board also recommended that the written reprimand be removed from plaintiff's file, on the grounds that the subject of the reprimand had been raised in a then pending grievance, but did not pass on the substance of the reprimand.

then every public employee would have a protected property interest not only in continued employment but in every condition of employment, however trivial. In point of fact, however, the evidence raised by plaintiff does not begin to reach the level of suggesting the existence of "mutually explicit understandings" covering the benefits whose loss plaintiff now grieves.

■ Plaintiff also claims that defendants' actions constitute an impermissible infringement of his rights to free speech. This claim cannot stand, however, in light of the United States Supreme Court's recent decision in *Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), where it was held that:

> When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

—— U.S. at ——, 103 S.Ct. at 1690.[2] It can scarcely be denied that the topics of plaintiff's speech—his individual salary increases, his perquisites, his position on the college organizational chart, or the identity of his superiors—are quintessentially items of individual, rather than public, concern, and the *Connick* court made it plain that an individual cannot bootstrap his individual grievance into a matter of public concern either by bruiting his complaint to the world or by invoking a supposed popular interest in all aspects of the way public institutions are run. *Id.* It is also worth noting that the losses of which plaintiff complains, while not necessarily trivial, pale in comparison to the situation in *Connick:* in that case the plaintiff, an assistant district attorney with five and a half years of exemplary service, was summarily fired by a superior who took umbrage at the manner in which she aired her grievances. *Id.* at

—— —— ——, 103 S.Ct. at 1686–87. Even more aptly than in *Connick,* therefore, it can be said in this case that:

> It would indeed be a Pyrrhic victory for the great principles of free expression if the [First] Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to constitutionalize the employee grievance that we see presented here.

*Id.* at ——, 103 S.Ct. at 1694.

■ Plaintiff's final federal claim is that defendants denied him equal protection of the laws and/or conspired to deny him equal protection of the laws. In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), however, it was revealed that an infringement of an individual's equal protection rights by *ad hoc* actions must involve "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Cf. also Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) ("Proof of racially discriminatory intent is required to show a violation of the Equal Protection Clause."). Plaintiff simply does not meet this requirement if he can do no more than try to fit himself into a putative "class" of faculty members who have been mistreated because they expressed views (of whatever variety) that conflicted with those of their superiors; otherwise all torts done to any one individual that had ever been done to another would be made the subject of a federal cause of action, resulting in the very generalized federal tort law that the Supreme Court was at pains to avoid in *Griffin,* see 403 U.S. at 102, 91 S.Ct. at 1798.

■ There remain plaintiff's state law claims. An evaluation of these claims is unnecessary, however, since *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), mandates that pendent state claims be dismissed on jurisdictional grounds if the anchor federal claims have been disposed of before trial.

---

**2.** The Court also made it clear that "[t]he inquiry into the protected status of speech is one of law, not fact." *Id.* n. 7.

The instant case presents a none too pretty picture of obvious mutual antipathy between plaintiff and his superiors, and the Court does not doubt that plaintiff feels, most deeply, that defendants have wronged him. But even if it is assumed that defendants are entirely to blame for the unfortunate situation that has arisen, this Court is simply not empowered by the law to intervene, and, in any case, the kind of interpersonal friction that underlies this case is, realistically, unlikely to be remedied by a mere judicial decree.

IT IS ACCORDINGLY ORDERED that summary judgment be entered in favor of defendants on plaintiff's federal claims, Counts I and II, and that plaintiff's state claims, Counts III and IV, be dismissed for want of subject matter jurisdiction.