Lawrence J. FERRARA, Plaintiff,

v.

Thomas J. MILLS, individually and as Superintendent of Schools for Palm Beach County, Florida; John Munroe, individually and as former Principal of John I. Leonard High School; and Luke Thornton, individually and as Principal of John I. Leonard High School, Defendants.

No. 82–8329–CIV.

United States District Court, S.D. Florida, N.D.

Nov. 14, 1984.

I. Jeffrey Pheterson, Lake Worth, Fla., for plaintiff.

Richard Oftedal, West Palm Beach, Fla., for defendants.

### ORDER OF DISMISSAL

GONZALEZ, District Judge.

#### I.

IN THIS ACTION plaintiff Lawrence J. Ferrara alleges that his former superiors at John I. Leonard High School and the Palm Beach County School Board violated his constitutional rights by changing his class assignments and hours in retaliation for plaintiff's outspoken criticism of school policy.

Subject-matter jurisdiction is premised on 28 U.S.C. § 1343(3) and the first and fourteenth amendments to the United States Constitution. Appended to plaintiff's federal questions is a tort claim for intentional infliction of emotional distress. The doctrine of pendent jurisdiction makes possible this court's review of that state claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The controlling question before the court is whether the subject speech concerns internal school administration or is more appropriately characterized as a matter of public concern. Defendants have moved for summary judgment on this issue, and the court now reviews the question because "[t]he inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983).

In reviewing defendants' motion for summary judgment, the court is mindful that the movants bear the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); the evidence is reviewed in the light most favorable to the nonmovant. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983).

#### II.

When Lawrence J. Ferrara began working for John I. Leonard High School ("Leonard High School") in 1965, he was assigned to teach eleventh grade American history classes. By the 1980–1981 school year, Mr. Ferrara was teaching four eleventh grade American history classes and one twelfth grade political science course. During this period, Mr. Ferrara was able to work the school shift he desired, 6:45 a.m. to 2:15 p.m.

In January 1980, Mr. Ferrara was compelled to speak out against certain administrative policies at Leonard High School, including collegiate registration and the courses to which he and others had been assigned to teach during the 1981–1982 school year. As explained in his amended complaint, "[c]ollegiate registration allows high school students to choose their subjects and teachers. Plaintiff believed that this policy allowed cliques to concentrate in certain classes and add to the normal disciplinary problems." Amended Complaint ¶ 9 (filed May 5, 1983). As for course assignments, plaintiff wanted to teach advanced placement history, and furthermore objected to the school's hiring of physical education coaches to fill several vacancies in the social studies department.

Mr. Ferrara submits that he has voiced his concern over collegiate registration with "many others in the school community," Amended Complaint ¶ 9, and personally informed defendant John Monroe, former Principal of Leonard High School, that the use of athletic coaches as social studies teachers contributed to "civil illiteracy." *Id.* ¶ 10.

Curiously, Mr. Ferrara also avers that during 1980 he often called various radio talk shows and spoke out on a variety of subjects. No mention is made of the content of these discussions, and thus their relevance is dubious. No doubt Mr. Ferrara would have the court believe that he

pontificated on school and Board policy when he called these programs.

Sometime toward the end of the 1980–1981 school year, then-Principal Munroe assigned Mr. Ferrara to teach elective (i.e., less prestigious) classes to ninth and tenth (rather than eleventh and twelfth) graders during the 9:45 a.m. to 5:15 p.m. (rather than the 6:45 a.m. to 2:15 p.m.) shift. Mr. Ferrara maintains that these undesirable assignments are the direct result of his criticism of school policy.

Although Mr. Ferrara fulfilled his assigned tasks during the first half of the 1981–1982 school year, he did request that defendant Luke Thornton (who replaced Mr. Munroe as Principal of Leonard High School) reinstate him to his original class assignment and time schedule for the second term. Mr. Thornton denied this request. Mr. Ferrara repeated his demands at the beginning of the next school term to Mr. Thornton, Mr. Monroe (who had become an Area Superintendent for the Palm Beach County School System) and defendant Thomas Mills, who served as the Superintendent of Schools for Palm Beach County. When his request was again denied before the start of the second term of the 1981–1982 school year, Mr. Ferrara claims he was overcome by severe headaches, psoriasis, insomnia and other stress-related disorders, and consequently could not work for the rest of the year. Mr. Thornton's evaluation of Mr. Ferrara's performance during that year indicates the problems posed by the latter's attitude.

> Mr. Ferrara has a considerable amount of discipline problems. Students have difficulty understanding his approach.
>
> . . . .
>
> Mr. Ferrara does not have an effective relationship with associates. He complains about assignments. He missed half of the year because he could not cope with stress.

Amended Complaint, Exhibit A (Palm Beach Co. Teacher Evaluation Form, dated June 8, 1982).

According to the amended complaint, the defendants' administrative policies violated plaintiff's constitutional rights protected under 42 U.S.C. § 1983, including his first amendment right to free speech. Defendants' actions also allegedly caused plaintiff to suffer mental anguish and physical shock.

### III.

■ A court deciding a claim by a public employee that his first amendment right to free speech has been violated must engage in a three step analysis. The court must determine (1) whether the plaintiff has carried the burden of demonstrating that his "speech" concerned matters of public concern and thus constitutes a protected activity, *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); (2) whether the protected activity was a substantial or motivating factor in the actions taken against the plaintiff, *Mt. Healthy City School Dist. Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); and (3) whether the defendant has defeated the plaintiff's claim by demonstrating that the same action would have been taken in the absence of the protected activity, *Givhan v. Western Lines Consolidated School Dist.*, 439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979).

■ In this case the court need only inquire into the first level of analysis. A review of the entire record convinces the court that plaintiff's speech, while tangentially related to matters of public concern, constitutes nothing more than a series of grievances with school administrators over internal school policies. The court reaches this result after weighing the time, manner and place of the speech; the context in which the dispute arose; the degree of public interest in the speech; and the need for harmony and discipline in the school system. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1691–92, 75 L.Ed.2d 708 (1983).

### IV.

In a working environment there exists an obvious tension between an employee's

right to speak out as a citizen on work-related matters that also are of public concern and an employer's ability to control such activities in order to manage internal affairs.

The Supreme Court of the United States addressed this very issue in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In *Connick*, a disgruntled assistant district attorney circulated a questionnaire among her colleagues asking them to comment on favoritism, incompetency and political pressure that allegedly existed in their office. When the District Attorney caught wind of the activity, he discharged the assistant, prompting her suit on first amendment grounds.

Justice White, writing for the Court, reversed the Fifth Circuit and held that the assistant prosecutor's discharge did not violate her first amendment right to freedom of speech. This court recites relevant passages from that decision because they provide guidance in the case at bar.

> [I]f [the assistant prosecutor's] questionnaire cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge. When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.
>
> . . . .
>
> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the state.
>
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.
>
> . . . .
>
> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Connick*, 103 S.Ct. at 1689–91.

The key to this case is whether Mr. Ferrara's speech involves matters of public concern. Mr. Ferrara points out that his comments to school administrators regarding collegiate registration and the classes to which he and others were assigned touch on matters that are uniquely of public concern: the education and well-being of our nation's school children. Plaintiff's memorandum in opposition to defendant's motion for summary judgment, at 9 (filed July 25, 1984). While there no doubt is some truth to his claim, Mr. Ferrara's comments were addressed to school administrators, and any relationship between his statements and matters of public concern appears to be purely incidental. Plaintiff's flag-raising first amendment claims are nothing more than a smokescreen to camouflage sorted grievances with school administra-

tors. Furthermore, Mr. Ferrara's participation in local radio talk shows appears to be either irrelevant (because there is no credible evidence in the record to suggest that he discussed collegiate registration or class assignments on the public airways) or a self-serving attempt to create a first amendment claim "by bruiting his complaint to the world ...." *Mahaffey v. Kansas Board of Regents,* 562 F.Supp. 887, 890 (D.Kan.1983). Such bootstrapping is not persuasive in this case.

At what point does speech in an employment setting become a matter of public concern? Prior to its narrow interpretation of the first amendment in *Connick,* the Supreme Court had ruled that teachers had a constitutional right to speak out on the allocation of school funds and the need for additional revenue, *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); the need to elevate the state college system to a four-year program, *Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); the school dress code as it affected public support for bond issues, *Mt. Healthy City School Dist. Bd. of Education v. Doyle,* 429 U.S. 274, 284, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); and racially discriminatory school policies, *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 414, 99 S.Ct. 693, 695, 58 L.Ed.2d 619 (1979).

In the wake of *Connick,* the federal courts have substantially broadened the employer's rights to control employee speech activities that *relate to his employment* at the expense of first amendment freedoms. The United States District Court for the Eastern District of Kentucky explained this trend in *Landrum v. Eastern Kentucky University,* 578 F.Supp. 241 (E.D.Ky.1984), a case in which a professor's discharge for circulating a *"Connick"* questionnaire and fomenting criticism of the administration was held not to violate the first amendment.

In frankness, the court must state that it reads *Connick* to narrow the scope of [*Perry, Mt. Healthy* and *Givhan* ], even

though they were not expressly overruled. A careful study of all these decisions leads to the inevitable conclusion that the First Amendment in the employment context is now to be more narrowly interpreted to give greater scope to the legitimate rights of governmental entities as employers, and also to reduce the burdens on the courts caused by the burgeoning of litigation initiated by the[se] decisions ....

*Id.* at 247.

Several cases illustrate the narrower interpretation of first amendment speech rights after *Connick.* In *Renfroe v. Kirkpatrick,* 722 F.2d 714 (11th Cir.1984), plaintiff maintained that the Superintendent of Education fired her because she had filed a grievance contesting his decision to have her share a full-time position with another teacher. According to plaintiff, she had seniority and more teaching experience and thus was entitled to the job outright. The court found plaintiff's constitutional claim to be fatally flawed, however, because she neither mentioned in her discussion with the Superintendent nor in her written grievance that her objection to job sharing was motivated in part by concern for her student's welfare, which arguably could have been a matter of public interest. Plaintiff failed to raise this latter claim until the oral presentation of her grievance to the School Board. Thus, the subject speech, in this case plaintiff's grievance, lacked any reference to a matter of public concern. Accordingly, the court of appeals ruled that airing claims of arguably public interest for the first time before an administrative review panel "is not sufficient to bring [such claims] within the rubric of matters of 'public concern.'" *Id.* at 715.

*Mahaffey v. Kansas Board of Regents,* 562 F.Supp. 887 (D.Kan.1983), also is instructive. Plaintiff there was a university faculty member who took issue with the administration's policy on salaries, organization and identity of his supervisors. So heated was their disagreement that plaintiff even published a student paper "that unflatteringly portrayed certain adminis-

trative decisions taken within his department." *Id.* at 889. In retaliation, says plaintiff, his department head gave him a poor evaluation which ultimately resulted in a diminished appointment. The district court ruled, *inter alia*, that the university's actions did not constitute an impermissible infringement of plaintiff's right to free speech. The court considered the topics of plaintiff's speech to be "quintessentially items of individual, rather than public, concern . . . ." *Id.* at 890.

Relying on *Mahaffey* and *Connick*, the United States District Court for the Northern District of Georgia also ruled that a teacher's comments were not protected by the first amendment in *Ballard v. Blount*, 581 F.Supp. 160 (N.D.Ga.1983). The plaintiff, a professor, alleged that the university took retaliatory action against him after he complained about salaries, class assignments, hiring practices, and content and administrative procedures used to review syllabi. The court refused to characterize plaintiff's grievances as matters of public concern, although they no doubt had some bearing on matters of public interest.

The reasoning of the *Ballard* court is noteworthy because it goes to the heart of the tension between employer authority and employee first amendment rights. The court recognized that virtually all speech made in and about the employment setting has some public significance. 581 F.Supp. at 164. The question is at what point does the link between the employment-related comments and matters of public concern become so tenuous as to not be deserving of absolute first amendment protection? *Connick* suggests that we look first to the relationship between the employee's position and the content of his speech. We should ask whether the employee's grievances are not more properly channeled to well-defined forums such as review committee's or arbitrators; whether the employee would have reason to make mention of his grievances but for his employment status; how significant is the subject of the employee's speech to the general public; and whether the subject of the employee's speech has become a public issue because

of attention from the press, politicians, public interest groups or the public at large?

*Bowman v. Pulaski County Special School District*, 723 F.2d 640 (8th Cir. 1983), addresses these issues. The *Bowman* court held that the involuntary transfer of several teachers following their administration of and public comments about corporal punishment violated the teachers right to free speech because the issue was one of public concern. The teacher's use of corporal punishment drew a considerable amount of press coverage and caused turmoil in the community.

In contrast to *Bowman*, the record in the instant case is conspicuously lacking substantial evidence that Mr. Ferrara's "crusade" was embraced by the community at large. Plaintiff offers one newspaper clipping from the *Washington Times* (May 5, 1983) as proof that his grievances had some public import. This certainly is inconclusive because out-of-state coverage of Mr. Ferrara's story does not demonstrate that plaintiff's comments are of interest to *his* community. Furthermore, press coverage of Mr. Ferrara's discharge is not the same as coverage of the issues about which he spoke. Press coverage of this latter variety is significant because it indicates that a person's comments are of concern to members of his community, too.

To this end, Mr. Ferrara also submits articles from the *Palm Beach Post* and the *Miami Herald* which address student "illiteracy" and teachers working in fields in which they are not certified. Neither of these articles is relevant, for they appeared in December 1983, several years *after* Mr. Ferrara had begun complaining about collegiate registration and class assignments, and long *after* he had stopped teaching. The relevant inquiry is whether the subject of Mr. Ferrara's speeches were matters of public concern *at the time he made the comments*. No credible evidence of any kind exists to suggest that such was the case.

*McGee v. South Pemiscot School District R–V,* 712 F.2d 339 (8th Cir.1983), provides some perspective on the nature and timing of comments that are found worthy of first amendment protection. The subject of concern in *McGee* was the school board's decision to discontinue junior high school track, which became an issue in the campaign for the board that year. Trouble began when the only newspaper in the county published a letter from several school board members in which they attempted to justify their decision to end the track program. In their letter, the board members stated that John McGee, a popular teacher and track coach at one junior high school, had supported the decision. Several days later, the paper published a letter from McGee renouncing the board's decision. After the election, the school board voted not to renew Mr. McGee's teaching contract.

Mr. McGee subsequently filed suit against the school board under 42 U.S.C. § 1983, charging that it had violated his constitutional rights by failing to rehire him because he had exercised his first amendment right to freedom of speech. The court of appeals reversed the district court's decision granting the board's motion for a judgment *non obstante veredicto* and a conditional new trial, reasoning that the subject of plaintiff's letter was a matter of public concern and finding substantial evidence in the record to support the jury's conclusion that the board did not renew Mr. McGee's contract because of his public comments.

*McGee* demonstrates how an issue as parochial as the funding of a school track program can become a matter of public concern. The only newspaper in the county published articles about the issue; members of the community had circulated a petition addressing the subject; the board's decision was a substantial campaign issue; and the subject of Mr. McGee's remarks was a volatile campaign issue at the time he made them.

By way of comparison with plaintiff's protected speech in *McGee,* Mr. Ferrara's comments in this case arose in the context of a dispute with school administrators over matters that were of unique concern only to Mr. Ferrara. This stands in sharp contrast with the circumstances surrounding plaintiff's remarks in *Bowman* and *McGee,* which arose in the context of a then-current public debate over the issues of corporal punishment and school funding, respectively.

On balance, then, there being no genuine dispute as to any material fact, the court finds that Mr. Ferrara's speech did not involve matters of public concern and thus is not protected by the first amendment to the United States Constitution.

■ Lacking an independent basis for federal jurisdiction now that plaintiff's constitutional claim has been dismissed, the court also dismisses Mr. Ferrara's pendent state claim for intentional infliction of emotional distress. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The court notes, however, that a review of Florida law indicates that the conduct of which plaintiff complains does not seem to rise to the level of outrageousness required to sustain this tort action. *See, e.g., Ford Motor Credit Co. v. Sheehan,* 373 So.2d 956 (Fla. 1st DCA 1979) (creditor's employee seeking to obtain plaintiff's address called plaintiff's mother and told her plaintiff had been in a serious automobile accident and must be contacted by creditor).

### V.

Based on the foregoing, the court grants defendants' motion for summary judgment in all material respects.