Matthew STALTER, Individually,
Plaintiff,

v.

CITY OF MONTGOMERY,
Etc., et al., Defendants.

Civ. A. No. 90V–1088–N.

United States District Court,
M.D. Alabama, N.D.

June 22, 1992.

Julian McPhillips, Kenneth Shinbaum McPhillips, Hawthorne & Shinbaum, and Gary E. Atchison, Montgomery, Ala., for plaintiff.

N. Gunter Guy, Jr., Brannan & Guy, Montgomery, Ala., for defendants.

## OPINION

VARNER, Senior District Judge.

This cause is now before the Court on Defendants' Motion for Summary Judgment filed January 17, 1992,[1] and on the materials submitted in support of and in opposition thereto. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

Plaintiff is a former fire fighter with the Fire Department of the City of Montgomery, Alabama. Plaintiff claims that he was assigned 25 consecutive "night watches" as discipline in retaliation for filing a grievance over a superior's order that Plaintiff shave or cover his chest hair and was given a 29–day suspension for appealing that punishment. The reason given for the punishment was Plaintiff's insubordination and other alleged rule infractions committed by Plaintiff. Plaintiff brings this action under 42 U.S.C. § 1983 alleging violations of his right to petition (Count Five) under the First Amendment. Plaintiff also seeks a declaratory judgment that the portion of the Montgomery Fire Department's grooming policy relating to chest hair is in violation of a 1976 Consent Decree and is, therefore, unenforceable (Count Four).[2]

*Facts.* The following facts are undenied. Following a roll-call inspection on April 6, 1990, Defendant Lieutenant M.E. Pitts informed Plaintiff that Plaintiff needed to either put on a t-shirt or shave the chest hair showing from under his uniform shirt. Plaintiff replied that the City of Montgom-

ery did not issue t-shirts to fire fighters and that chest hair was not facial hair. Lt. Pitts notified Defendant District Chief A.L. Wright of the situation, and District Chief Wright came down to the station and counseled with Plaintiff in Lt. Pitts' presence. District Chief Wright told Plaintiff either to put on a t-shirt, shave his chest hair, or resign. Plaintiff shaved his chest hair. Immediately thereafter, District Chief Wright informed Plaintiff that the Department could not tolerate the type of attitude displayed by Plaintiff, and that any more problems would result in time off the payroll.

On April 15, 1990, Plaintiff delivered a memorandum addressed to Lt. Pitts which stated: "I would like to start grievance procedures concerning the order given to me by Chief A.L. Wright, to shave the hair on my chest." [Ex. 3 to Plaintiff's Brief in Opposition filed April 16, 1992]. Shortly thereafter, Plaintiff received a disciplinary memorandum from Lt. Pitts, also dated April 15, 1990, in which Plaintiff was given 25 consecutive night watches for various violations of the Montgomery Fire Department rules and regulations, including that "[m]embers shall be neat and clean in person, clothing and habits, and be cleanly shaved," shall "[n]ot neglect to perform any portion of their duties required by rule, regulation, order, common practice, or necessities of the situation involved," and shall "[b]e respectful and obedient to their superior officer." [Ex. 4 to Plaintiff's Brief in Opposition, *supra*]. This disciplinary memo gave Plaintiff the option of either accepting or rejecting the assigned company punishment. Plaintiff checked off and signed the latter option which stated: "I am not willing to accept company punish-

---

1. Defendants' motion was dismissed as untimely by Order of this Court dated February 11, 1992, and Defendants' Motion to Reconsider filed herein February 12, 1992, was denied by Order dated February 12, 1992. The denial of Defendants' Motion to Reconsider was set aside, and Defendants' original Motion for Summary Judgment was submitted for consideration by this Court's Order dated April 6, 1992.

2. By Order entered February 19, 1992, this Court granted Plaintiff's Motion to Amend Complaint and Order on Pre-trial Hearing filed February 18, 1992, wherein Plaintiff voluntarily dismissed Counts One, Two, and Three of his original Complaint. Plaintiff's Motion to Reinstate Counts One, Two and Three of the Complaint filed April 14, 1992, was denied for the reasons stated in this Court's Order dated June 19, 1992.

ment and hereby request a hearing concerning the above mentioned rule(s) violation(s)." [*Id.*].

Plaintiff subsequently received hearings before various superiors in the Montgomery Fire Department on the company punishment of 25 night watches given him for alleged rule violations, with similar hearings including a hearing before the Mayor of Montgomery on his grievance over the requirement that he shave or cover his chest hair. Plaintiff ultimately received a 29–day suspension without pay.

Defendants now ask this Court to grant summary judgment on the grounds that the grievances for which Plaintiff claims to have been retaliated against did not relate to matters of public concern and, therefore, are not protected by the First Amendment. As for Plaintiff's request for a declaratory judgment, Defendants contend that the 1976 Consent Decree is irrelevant and inapplicable to the Montgomery Fire Department's current grooming policy regarding chest hair. This Court is of the opinion that Defendants' Motion for Summary Judgment is due to be granted.

*Summary Judgment Standard.* In considering a motion for summary judgment, this Court must refrain from deciding material factual issues but, rather, must decide whether such factual issues exist and, if not, whether the party moving for summary judgment is entitled to judgment as a matter of law. *See Dominick v. Dixie National Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). Furthermore, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *See Tippens v. Celotex Corp.,* 805 F.2d 949 (11th Cir.1986). "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *accord Kramer v. Unitas,* 831 F.2d 994, 997 (11th Cir. 1987). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly sup-

ported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact*" [emphasis in original]. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party ... If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." *Id.; accord Brown v. City of Clewiston,* 848 F.2d 1534, 1537 (11th Cir.1988).

*First Amendment Right to Petition.* Plaintiff claims that Defendants retaliated against him for the exercise of his right to petition for redress of grievances. Plaintiff bases this claim on two separate instances of allegedly protected First Amendment activity: (1) Plaintiff's written grievance dated April 15, 1990, and (2) his written election not to accept and to request a hearing on the punishment of 25 night watches given in the April 15, 1990 disciplinary memo from Lt. Pitts. [Order on Pretrial Hearing filed February 7, 1992, p. 6 ¶ 17, p. 9 ¶ 32].

While it is well established that a state may not discharge or discipline a public employee in retaliation for speech protected by the First Amendment, it is also clear that a public employee's right to freedom of speech is not absolute. *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989). To prevail in a claim for unlawful retaliation under the First Amendment, the public employee must show that the speech in question was on "a matter of public concern," that the employee's First Amendment rights outweigh the employer's interest in the efficiency of its public services, and that the protected speech was a substantial motivating factor in the adverse employment decision. *Id.* [citing *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), and *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)]. Once the Plaintiff makes this showing, the public employer then has the burden of proving that it

would have reached the same employment decision in the absence of the employee's protected speech. *Bryson v. City of Waycross*, 888 F.2d at 1566 [citing *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977)].

Whether the subject of Plaintiff's speech was a matter of public concern is a threshold question of law. *Eiland v. City of Montgomery*, 797 F.2d 953, 957 n. 5 (11th Cir.1986). The Court must look to the "content, form, and context of a given statement, as revealed by the whole record," in making this determination. *Id.* at 956–57 n. 4 (quoting *Connick v. Myers*, 461 U.S. at 147–48, 103 S.Ct. at 1690). The interests protected by the First Amendment in the public employment context are "the interests of the [employee], as a citizen, in commenting upon matters of public concern." *Connick v. Myers*, 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Board of Education*, 391 U.S. at 568, 88 S.Ct. at 1734). Thus, absent a showing that the subject of Stalter's grievances related to matters of public concern, this Court need go no further with Plaintiff's First Amendment retaliation claim.

■ Plaintiff claims that the April 15, 1990, written grievance he sent to Lt. Pitts regarding the order he received to shave his chest hair or wear a t-shirt was on a matter of public concern and, therefore, was protected under the First Amendment. In support of his contention that the application of the Fire Department's chest hair policy to him was a matter of public concern, Plaintiff argues that this first grievance was, in essence, requesting an interpretation of a 1976 Consent Decree which had set forth certain grooming guidelines for the Montgomery Fire Department. Thus, Plaintiff maintains that questioning the requirement that fire fighters shave or cover their chest hair affected the entire department and, therefore, was a matter of concern to the whole community. Plaintiff further points out that the instant suit was originally filed on behalf of all members of the Montgomery Fire Fighters Association, seeking a declaratory judgment on the application of that Consent Decree.[3]

However, there is no evidence before the Court to show that the 1976 Consent Decree, which subsequently became an issue in this suit, was mentioned by Plaintiff in initiating or pursuing his grievance over the order he received to cover or shave his chest hair. In opposition to summary judgment, Plaintiff has submitted his affidavit which states that "on April 15, 1990, when I filed my grievance with the Montgomery Fire Department ... I was simply seeking an interpretation of whether the U.S. District Court's decree in *Elliott v. Odom* applied to me." [Stalter Affidavit dated April 14, 1992, ¶ 3, Ex. 5 to Plaintiff's Brief in Opposition, *supra*]. In an earlier affidavit, however, Plaintiff made no mention of the Decree, stating, "I felt compelled to file a grievance concerning my being required to shave my chest hair when there was no rule in the Department requiring that this be done." [Stalter Affidavit dated January 28, 1992, ¶ 3, Ex. 6 to Plaintiff's Brief in Opposition, *supra*]. Regarding the initial April 6 incident with Lt. Pitts, Plaintiff also stated, "I therefore questioned in good faith whether such a rule existed." [*Id.* ¶ 2].

Plaintiff's earlier version of the events is also consistent with the other evidence before the Court regarding Plaintiff's pursuit of his April 15 grievance memo, which itself did not mention the Consent Decree. A memo from Plaintiff to District Chief Wright dated April 6, 1990 regarding the April 6 incident with Pitts does not discuss the Decree, but states only that Plaintiff "couldn't find anything in the rule book concerning chest hair." [Ex. 2 to Defendant's Reply Brief filed April 21, 1992]. Nor was the Decree discussed in a May 21, 1990 meeting between Plaintiff and Defendants Chief Grier, Deputy Chief Fulmer, and District Chief Wright. Plaintiff's grievance was discussed there in terms of

---

**3.** Plaintiff's Motion to Strike Class Action Allegations filed June 6, 1991, was granted by Order of this Court dated June 7, 1991.

the Fire Department's rules and whether the order given Plaintiff on April 6 regarding his chest hair was covered by those rules. [Ex. 3 to Defendant's Reply Brief, *supra,* pp. 7–9].

Thus, it is clear from the evidence that the subject of Plaintiff's April 15 grievance was merely a personal dispute between Plaintiff and his superiors over the interpretation of the Department's grooming rules and their application to him. That Plaintiff later raised issues regarding a prior lawsuit and the Consent Decree entered therein does not make the subject of his initial grievance, for which he now claims he was unlawfully punished, a matter of public concern. *See Renfroe v. Kirkpatrick,* 722 F.2d 714, 715 (11th Cir. 1984) (concern of teacher for students' welfare which was not raised in initial grievance or discussion with superintendent did not bring grievance within area of public concern).

■ As for Plaintiff's second allegedly protected communication, it, too, involved merely a personal dispute between Plaintiff and his superiors. Plaintiff elected to refuse the company punishment given him by the April 15, 1990 disciplinary memo from Lt. Pitts and to request a hearing on the incident. Plaintiff was given 25 night watches for the violation of several cited Fire Department rules. Plaintiff offers no evidence to show that his appeal of punishment given him by his employer amounted to anything more than a dispute personal to him. This is precisely the type of routine, personnel grievance that the Supreme Court excluded from constitutional protection in *Connick.*

Although he maintains that the subjects of both grievances related to matters of public concern, Plaintiff contends that his right to petition claim is distinct from a free speech claim and not governed by the analysis of *Connick* and *Pickering* outlined above; therefore, his grievances need not have been on matters of public concern

to receive constitutional protection. This Court must reluctantly disagree.[4] While the Eleventh Circuit has never specifically addressed the issue, its decisions in the area of First Amendment retaliation indicate that the subject of a public employee's grievance in a right to petition claim must relate to a matter of public concern. *But cf. Hatcher v. Board of Public Education and Orphanage,* 809 F.2d 1546, 1558 (11th Cir.1987) (expressly holding that *Connick* 's public concern requirement is inapplicable to First Amendment freedom of *association* claims); *accord Schneider v. Indian River Com. College Foundation,* 875 F.2d 1537, 1543 n. 6 (11th Cir.1989). Additionally, the weight of authority in other circuits addressing this issue argues for the application of *Connick* and *Pickering* to right to petition retaliation claims in the public employment context.

Soon after the United States Supreme Court's decision in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Eleventh Circuit ruled in *Renfroe v. Kirkpatrick,* 722 F.2d 714 (11th Cir.1984), that a school teacher's grievance against her former employer was not constitutionally protected. In *Renfroe,* the plaintiff brought a § 1983 action claiming that she was not rehired because she had filed a grievance over being asked to share a full-time job with another teacher. In reliance on *Connick,* the Eleventh Circuit stated, "It is now clear that plaintiff's grievance is protected under the First Amendment only if it related to a matter of public concern." *Renfroe v. Kirkpatrick,* 722 F.2d at 715. Finding Renfroe's grievance to have been merely personal, the court affirmed the district court's entry of judgment n.o.v. for the defendant employer.

Plaintiff seeks to distinguish *Renfroe* from the case at bar, pointing out that the *Renfroe* Court addressed only a free speech claim. While it is true that the brief Eleventh Circuit opinion in *Renfroe*

---

**4.** The Court is concerned about the appearance of unfair treatment in such situations as this when a public employee's decision to appeal disciplinary decisions ultimately results in more extreme punishment than was given originally. Nonetheless, this Court is constrained by the applicable law.

appeared to characterize the plaintiff's grievance as "speech," and nowhere mentioned the right to petition, this Court cannot avoid the striking similarity between the facts of *Renfroe* and those of Plaintiff Stalter's case. *Renfroe* apparently claimed that she was retaliated against for filing a written grievance, the subject of which she raised in a discussion with the superintendent of schools and ultimately presented to a hearing of the entire school board. Plaintiff in the instant case claims that he was retaliated against for filing a written grievance, which he discussed with various superiors in the Fire Department and ultimately the mayor, and for electing in writing to refuse company punishment and request a hearing on the discipline imposed by his Lieutenant. This Court can find no support for drawing a constitutional distinction between *Renfroe's* grievance, labeled an exercise of "free speech," and Plaintiff Stalter's grievances, labeled an exercise of the "right to petition."

The Eleventh Circuit since *Renfroe* has applied the *Connick* and *Pickering* analysis in a case that would seem to have implicated a "petition" claim similar to those of Plaintiff Stalter. In *Ferrara v. Mills*, 781 F.2d 1508 (11th Cir.1986), the Court applied *Connick* and found the fact that a teacher took his grievances over teaching assignments and course selection through proper channels to his principal, the superintendent, and then the school board irrelevant to the threshold question whether the subject of his grievances related to matters of public concern. *Id.* at 1514. Rather, the Court held that such factors were to be weighed in the *Pickering* balancing of the employer's interests against the employee's constitutional rights. *Id.* The Court of Appeals affirmed the District Court's conclusion that "that '[Ferrara's] speech, while tangentially related to matters of public concern, constitute[d] nothing more than a series of grievances with school administrators over internal school policies' and, therefore, was not protected under the first amendment." *Id.* at 1511 [quoting *Ferrara v. Mills*, 596 F.Supp. 1069, 1071 (S.D.Fla.1984)].

■ Nonetheless, Plaintiff contends that, although a free speech retaliation claim must satisfy the "public concern" requirement of *Connick*, his right to petition retaliation claim should be free of this burden. To accept Plaintiff's argument would be necessarily to conclude that Plaintiff's rights under the petition clause of the First Amendment are separate and distinct from his rights under the free speech clause of that amendment. However, the Supreme Court has identified these First Amendment rights not as separate, discreet privileges, but as part of a broad safeguard of free expression. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985); *accord Day v. South Park Indep. School District*, 768 F.2d 696, 701 (5th Cir.1985); *Gray v. Lacke*, 885 F.2d 399, 412 (7th Cir.1989). Thus, this Court can find no justification for applying a different standard to Plaintiff's petition claim from that required for a free speech claim. To relieve Plaintiff of the "burden" of proving that his grievance related to a matter of public concern would, in effect, turn on its head the limited First Amendment protection afforded public employees by *Connick* and *Pickering*. The Supreme Court stated in *Connick*:

"When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S. at 146, 103 S.Ct. at 1690.

The Supreme Court went on to distinguish protected speech on matters of public concern from that of the plaintiff employee in *Connick*: "Myers' questionnaire touched upon matters of public concern in only a most limited sense; her survey, in our view, is most accurately characterized as an employee grievance concerning internal office policy." *Id.* at 154, 103 S.Ct. at 1693. To give a public employee's expression

more protection based simply on the fact that he or she has framed it as a formal, written grievance, and has characterized it as an exercise of his or her right to petition appears contrary to the balance announced by the Supreme Court between the employee's limited First Amendment interest and the public employer's interest in efficient operations. *See Id.*

Plaintiff's authority in support of his position that *Connick* is inapplicable to Plaintiff's petition claim is unpersuasive. The cases cited by Plaintiff deal with access to courts claims and petition claims implicating the right of association. *See Harrison v. Springdale Water & Sewer Com'n,* 780 F.2d 1422, 1427 (8th Cir.1986) (right of access to courts may not be impaired); *McCoy v. Goldin,* 598 F.Supp. 310, 314–15 (S.D.N.Y.1984) (holding *Connick's* public concern requirement inapplicable to the right of access to courts); *Stellmaker v. DePetrillo,* 710 F.Supp. 891 (D.Conn.1989) (right of public employee to file grievance under procedures established through collective bargaining implicates both petition and association rights and, therefore, *Connick* public concern analysis inapplicable). Plaintiff has not brought an access to courts claim, nor has he raised any allegations to indicate that his petition claim implicates the First Amendment's right to freely assemble or associate.[5]

This Court finds further support for applying *Connick's* public concern analysis to Plaintiff Stalter's petition claim in the decisions of other circuits that have addressed the issue. *See, e.g., Schalk v. Gallemore,* 906 F.2d 491, 498 (10th Cir. 1990) (*Connick* analysis applied to both free speech and right to petition claims in retaliatory discharge case); *Hoffman v. Mayor, Councilmen & Citizens of Liberty,* 905 F.2d 229, 232–33 (8th Cir.1990) (however characterized, speech or petition, employee grievance was subject to the same analysis under First Amendment); *Gray v. Lacke,* 885 F.2d 399, 412 (7th Cir. 1989) (in right to petition retaliation claim of public employee, first inquiry "whether petition touched upon matter of public concern"); *Day v. South Park Indep. School District,* 768 F.2d 696, 701–03 (5th Cir. 1985) (fact that employee chose to put her speech in formal grievance did not remove her petition claim from public concern analysis, absent implication of association rights).

Therefore, in that Plaintiff has failed to make a showing sufficient to establish an element essential to his claim—that his grievances fairly related to matters of public concern—Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ *Declaratory Judgment.* Plaintiff also seeks a declaratory judgment that the Defendants' chest hair policy violates a 1976 Consent Decree entered in the case of *Elliott v. Odom,* No. 4061–N (M.D.Ala. filed Jan. 14, 1976) establishing certain grooming and hair regulations for the Montgomery Fire Department and, therefore, is unenforceable. Plaintiff argues that the Consent Decree is the exclusive authority on the Department's hair length

---

5. Plaintiff's contentions set out in the Order on Pretrial Hearing filed herein February 7, 1992 include an allegation relating to Plaintiff's right to petition claim in Count Five which avers that as a result of the violation of his right to seek redress and to petition for relief, "and as a result of his filing this lawsuit ... Plaintiff eventually resigned under pressure and, accordingly, suffered a constructive discharge." [Order on Pretrial Hearing, *supra,* ¶ 34]. This allegation was not in Plaintiff's original Complaint, nor was it in Plaintiff's Amendment to Complaint filed November 19, 1991, by which the right to petition claim in Count Five was added. It is the opinion of this Court that Plaintiff did not intend by this addition to state an access to courts claim under the First Amendment. Plaintiff has at all times made clear that his First Amendment retaliation claims are based on two incidents of allegedly protected expression: (1) his written grievance dated April 15, 1990, and (2) his written election to request a hearing on the 25 night watches given to him as punishment. [*See* Complaint filed October 11, 1990, ¶¶ 26–27; Amendment to Complaint filed November 19, 1991, ¶ 4; Order on Pretrial Hearing, *supra,* p. 6 ¶ 17, p. 9 ¶ 32]. Nor does Plaintiff attempt to argue now in opposition to summary judgment that his retaliation claims are based on anything other than those two incidents. [*See* Plaintiff's Brief in Opposition, *supra,* pp. 4–5].

requirements, that the Consent Decree should be strictly construed, and that any chest hair regulations or policies not found in the Decree should be declared void. Laying aside the dearth of authority presented by Plaintiff in support of his argument, this Court is convinced that Plaintiff's request for a declaratory judgment must be denied.

The Court finds itself in agreement with Defendants that the Consent Decree relied upon by Plaintiff did not purport to be, nor was it, exclusive of all other grooming policies that the Department may wish to implement. A consent decree, while an enforceable judgment, is in essence a contract between the parties and, therefore, "must be construed in the light of traditional tenets of contract construction." *Paradise v. Prescott*, 767 F.2d 1514, 1525 (11th Cir. 1985) (quoting *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 171 (5th Cir.1981)); *accord Strouse v. J. Kinson Cook, Inc.*, 634 F.2d 883, 885 (5th Cir.1981).[6] There is nothing "within the four corners" of the 1976 Decree to support Plaintiff's contentions. *See Strouse v. J. Kinson Cook, Inc.*, 634 F.2d at 885.

The Decree states that fire fighters are to "wear a proper and clean uniform and shall have shoes shined," and then continues with specific guidelines in four discreet areas: "Hair," "Afro," "Moustaches," and "Sideburns." [Exhibit 1 to Plaintiff's Complaint, *supra* ]. For example: "Hair may touch the top of the collar of the shirt in the back but shall not extend below the top of the collar when the member is standing." [*Id.* at p. 2]. The Decree does not mention chest hair at all. But, then, neither does the Decree state that it was the intent of the parties that these guidelines be exclusive or exhaustive, or that they be bound by them in perpetuity. *Cf. Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 171–72 (5th Cir.1981) (where decree ordered defendant employer "to utilize permanently" a specific seniority system, court found that decree's requirements continued in force). The language of the Consent Decree offered by Plaintiff simply states that

these hair and grooming regulations were to be adopted and implemented by the Montgomery Fire Department. And while the Decree does direct the implementation order to the Defendants (including the Montgomery Fire Department and its then Chief Odom), "their agents, assigns, employees, successors in office, and all those in active concert or participation with them," there is nothing in the plain language of the Decree to support the conclusion that the parties intended the regulations therein to cover all possible areas and to limit forever the Department's ability to adapt its grooming requirements. In the absence of a clear intent of the parties to bind themselves in perpetuity to these four rules as the whole of the Department's grooming policy, this Court cannot find the Department's current chest hair policy violative of the terms of a 16–year–old Decree that neither addresses chest hair nor precludes the adoption of further guidelines. Therefore, Defendants are entitled to summary judgment, and Plaintiff's declaratory judgment claim is due to be dismissed.

An Order will be entered in accordance with this opinion.

---

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Court adopted as binding precedent in this Circuit decisions of the former Fifth Circuit handed down before October 1, 1981.