**W.L. BALLARD, Plaintiff,**

v.

**Paul BLOUNT, et al., Defendants.**

**Civ. A. No. C 81–2238A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 12, 1983.

J. Hue Henry, Athens, Ga., for plaintiff.

Michael Bowers, Atty. Gen., Alfred L. Evans, Asst. Atty. Gen., H. Perry Michael, Carol Atha Cosgrove, Sr. Asst. Attys. Gen., Atlanta, Ga., for defendants.

## ORDER

VINING, District Judge.

In this 42 U.S.C. § 1983 action, the plaintiff, a tenured professor at Georgia State University, alleges that he was retaliated against for conduct protected by the First and Fourteenth Amendments. In addition, he alleges that he was not awarded salary increases to which he was entitled and that this action violated the due process and equal protection clauses of the Fourteenth Amendment. The defendants have moved for summary judgment, claiming that the plaintiff's alleged speech was not protected because it did not relate to matters of "public concern" and that their pay raise system did not violate the plaintiff's due process and equal protection rights.

## I. BACKGROUND

The plaintiff, Dr. William Lewis Ballard, was hired as an assistant professor of English at Georgia State University in 1969, and shortly thereafter he began developing a linguistics program in the English department. In 1973 he was promoted to associate professor of English and was awarded tenure. He continued teaching only linguistics courses until 1979. From the inception of the linguistics program in 1969 until its ultimate dissolution in 1980, it is uncontroverted that the linguistics program was plagued by consistently low student interest. The defendants contend that the lack of student interest was the motivating factor in the decision to dissolve the program.

Shortly before the dissolution of the linguistics program, but at the time when enrollment in the linguistics courses was extremely low, defendant Dr. Blount, Chairman of the English department and Dr. Ballard's immediate supervisor, informed Dr. Ballard that he (Dr. Ballard) would have to teach traditional English courses rather than the linguistics courses which he had previously taught. Dr. Ballard chose teaching a freshman-level English class, and he began teaching this class in the fall of 1979. He continued teaching in the English department until September 1981, at which time he was transferred to the College of Public and Urban Affairs. Shortly thereafter, in December 1981, Dr. Ballard instituted this suit.

In his complaint Dr. Ballard alleges that he has received less than the average annual salary increases for the academic years 1976–77 through 1981–82. He claims that these less-than-average salary increases were retaliatory actions designed to punish him for the exercise of rights secured by the First and Fourteenth Amendments. Dr. Ballard also claims that the defendants retaliated against him in a variety of other ways, including: cancelling the entire linguistics program, failing to appoint him to faculty committees, denying him equal release time (pay without duties), and failing to assign him to appropriate summer teaching duties.[1]

---

1. These last three claims are dubious, since Dr. Ballard conceded in his deposition that he never sought to be appointed to any faculty committee, that he did receive release time, and that he never objected to the summer teaching duties to

After reviewing Dr. Ballard's complaint and deposition, this court has identified four separate communicative and associative activities for which Dr. Ballard claims he was retaliated against. These claims may be summarized as follows:

(1) A letter he wrote objecting to the joint decision of Dr. Blount and the Department Tenure Committee which recommended denying tenure to a colleague of Dr. Ballard. Ballard Deposition at 27.

(2) Dr. Ballard's challenges to the manner in which he and other colleagues were assigned to teach freshman-level English courses. Ballard Deposition at 19.

(3) Dr. Ballard's claim that he was further retaliated against when he unsuccessfully challenged through an internal administrative grievance procedure the defendants' decision to award him less-than-average annual salary increases. Complaint ¶ 25.

(4) Dr. Ballard's challenges to a proposed freshman English syllabus which restricted a teacher's latitude in conducting the class. Ballard Deposition at 18.

In addition to claiming that his less-than-average salary increases were in retaliation for protected First Amendment activity, Dr. Ballard claims that these salary increases denied him equal protection and due process. Complaint ¶¶ 23, 24.

## II. DISCUSSION

█ Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears an exacting burden of establishing that there is no dispute regarding any material fact in the case. *Warrior Tombigbee Transportation Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). And all reasonable doubts about the facts should be resolved in favor of the non-movant. *Clemons v. Doughterty County, Georgia,* 684 F.2d 1365, 1369 (11th Cir.1982).

which he was assigned. Ballard Deposition at 9, 42–45.

## A. *The First Amendment Claim*

█ The threshold inquiry in this case is whether Dr. Ballard's speech involved matters of "public concern," rather than matters relating merely to Dr. Ballard's personal interest. Speech involving the former is protected, whereas speech involving the latter is not. *Connick v. Myers,* — U.S. ——, ——, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). *See* Note, *Connick v. Myers: Narrowing The Free Speech Right of Public Employees,* 33 Cath.U.L.Rev. 429 (1983). If the employee's speech cannot be characterized fairly as constituting speech on a matter of public concern, it is unnecessary for the court to scrutinize the reasons for the employee's alleged reprimand. 103 S.Ct. at 1689. Whether Dr. Ballard's speech involved a matter of public concern is to be determined by the content, form, and context of a given statement as revealed by the whole record. *Id.* at 1690. Additionally, the question relating to the protected status of speech is one of law; thus it is an appropriate issue to be resolved on a motion for summary judgment. *Id.; Mahaffey v. Kansas Board of Regents,* 562 F.Supp. 887, 888, 890 (D.Kan. 1983).

In *Connick v. Myers,* the Supreme Court interpreted *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and its progeny and attempted to strike a balance between the interest of the employee, as a citizen, in commenting on matters of public concern, and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. The specific question framed by the *Connick* Court was "whether the First and Fourteenth Amendments prevent the discharge of a state employee for circulating a questionnaire concerning *internal office affairs.*" 103 S.Ct. at 1686 (emphasis added). The state argued that since the employee's questionnaire concerned matters relating only to internal office affairs, this

speech was not protected because, by definition, it did not relate to a matter of public concern. The Court agreed, reasoning that employee expression which does not relate to any matter of political, social, or other community concern is a personal, rather than a public, expression. *Id.* at 1690. Additionally, the court recognized that

> government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for dismissal are alleged to be mistaken or unreasonable.

*Id.*

The Court also noted that "the First Amendment does not require a public office to be run as a roundtable for employee complaints over *internal office affairs.*" *Id.* at 1691 (emphasis added). Finally, the Court recognized that even in those situations where the employee's speech has a limited impact on matters of public concern, it will not necessarily fall within the protection of the First and Fourteenth Amendments. *Id.* at 1693–94. In sum, the Court held

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 1690.

The *Connick* Court's public versus private distinction reflects the common-sense realization that government offices could not function if every employment decision became a constitutional matter. The Court rejected the proposition that all matters which transpire within a government office are of public concern, since this would

mean that every remark or criticism directed against a public official would plant the seed of a constitutional case. *Id.* at 1691. Indeed, if a faculty member need only point to some verbal criticism or altercation concerning his college, its curriculum, or how things are run in order to convert an adverse personnel decision into a federal action, then nearly every adverse personnel decision could be reviewed by a federal court under 42 U.S.C. § 1983.

The *Connick* decision was applied in a case remarkably similar to this case. In *Mahaffey v. Kansas Board of Regents,* 562 F.Supp. 887 (D.Kan.1983), a tenured professor claimed that he was punished for expressing opinions protected by the First and Fourteenth Amendments. The plaintiff's assertedly protected speech activities concerned matters such as his individual salary increases, his position on the college organizational chart, policy decisions concerning internal departmental affairs, and the identity of his superiors. The court characterized the discussion of these matters as quintessential items of individual, rather than public, concern. Further, the court noted that "the *Connick* [C]ourt made it plain that an individual cannot bootstrap his individual grievance into a matter of public concern either by bruiting his complaint to the world or by invoking a supposed popular interest in the way public institutions are run." *Id.* at 890. Accordingly, the court rejected the plaintiff's claim that this speech was protected by the First and Fourteenth Amendments. *See also Leonard v. City of Columbus,* 705 F.2d 1299, 1305 (11th Cir.1983) (interpreting *Connick* as providing less protection to complaints concerning purely internal office affairs than to those concerning matters of "public concern").

■ In applying the *Connick* test to Dr. Ballard's assertedly protected First Amendment activity, *see supra* p. 162, this court finds that Dr. Ballard's speech did not relate to matters of public concern and, thus, was unprotected. For example, the subject matter of Dr. Ballard's grievance which he pursued through the university's grievance procedure concerned his salary increases. An individual's salary is an issue personal

to the individual and has no relationship to matters of public concern. Similarly, Dr. Ballard's challenges to the manner in which he and his colleagues were assigned to teach the freshman English courses was a matter of private concern. The particular courses an individual is assigned to teach simply cannot be viewed as a matter in which the public has a legitimate interest. Accordingly, expression relating to this challenge simply does not rise to a matter of public concern.

The remaining two speech activities for which Dr. Ballard claims he was retaliated against also did not involve matters of public concern. Dr. Ballard's deposition makes it unmistakably clear that these challenges involve matters relating to internal college affairs rather than to matters of political or social import—matters of public concern.[2] The first speech activity concerned a proposed freshman English syllabus. In defendant Dr. Blount's deposition he recalled that during the faculty discussion of the proposed syllabus two general challenges were raised regarding this issue, and Dr. Ballard was only one of several faculty members discussing these challenges. Blount Deposition at 15–19, 29.[3] The first challenge concerned the prescriptive nature of the syllabus; the syllabus opponents claimed that the syllabus was too rigid and that syllabus removed the flexibility with which the teachers were accustomed. *Id.* at 15. The second challenge concerned the procedures employed to review and approve the proposed syllabus. Apparently,

one committee entrusted with the duty of initially reviewing such proposals had not been consulted. In any event, both of these challenges were addressed and resolved; the syllabus was eventually adopted, but only after it had gone through the correct administrative procedures and after the prescriptive tone of the syllabus was modified.

The plaintiff claims that this speech was related to a matter of public concern, since the decision regarding the syllabus would have an eventual, derivative effect on the freshman English students. Taken to its logical conclusion, the plaintiff's argument means that any time a person's speech will have an *effect* on the public, regardless of how small or unlikely that effect may be, that speech relates to a matter of public concern. This was a specific concern of the *Connick* Court, and the Court wisely rejected this identical argument. Accordingly, this court concludes that any speech relating to the discussion of the syllabus concerned matters of internal college affairs and did not relate to matters of public concern.

The final speech activity for which Dr. Ballard claims he was retaliated against concerned his objection to the administrative decision to deny tenure to a colleague, Tina Sizemore. For the reasons stated above, this court concludes that absent unusual circumstances an administrative decision to grant or deny tenure to an individu-

**2.** In pertinent part Dr. Ballard's Deposition reads as follows:

Q. What [allegedly protected] criticisms did you make that you feel are a basis of this action?

A. There were two or three that stand out in my mind that are particularly significant, but there were a number of minor ones all along. Some of the major ones had to do with the development over a period of years with regards to the freshman English syllabus adoption, new syllabus adoption, and there were the events that had to do with the letter I wrote to Dr. Blount on Tina Sizemore's decision or decision about Tina Sizemore.

Then there was a specific time when I—again, a sequence of events, but a particular event when I talked to the advisory council about the policies of how teachers were as-

signed in the freshman program, who taught it and under what conditions and so forth.

As I say, there were a number of things, all complex in themselves, and there were other actions as well, other times as well.

Q. Basically could you summarize and say that these are all to your perception constructive criticism of department policies in the functioning of the English department?

A. Yes.

Q. As opposed to positions on matters of public or political issues or things of that sort?

A. Yes.

Ballard Deposition at 19–20.

**3.** Dr. Blount's statements relating to the proposed English syllabus have neither been challenged nor contradicted by the plaintiff and therefore will be accepted as true.

al is not a matter of public concern, and an individual challenging this administrative decision is without First Amendment protection.

In sum, the court concludes that the speech for which Dr. Ballard alleges he was retaliated against, simply did not relate to matters of public concern and therefore was not protected.

### B. *The Due Process and Equal Protection Claims*

■ In his remaining constitutional claims Dr. Ballard asserts that the defendants' decision to award him less than the average annual salary increases violated his due process and equal protection rights. In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court identified four prerequisites necessary to assert a violation of the due process clause. These prerequisites include

(1) The conduct complained of must have been committed by a person acting under color of state law;

(2) There must be a constitutionally protected property or liberty interest at issue;

(3) There must have been a deprivation of this protected interest; and

(4) The deprivation of this interest must have occurred without due process of law.

*Id.* at 535–37, 101 S.Ct. at 1913–14. Although it is undisputed that the first requirement is satisfied here, the court finds that the remaining three requirements are not satisfied. In *Doyle v. University of Alabama in Birmingham,* 680 F.2d 1323 (11th Cir.1982), the Eleventh Circuit rejected the argument that a university professor had a protected property or liberty interest in a merely recommended salary raise. The plaintiff's proposed salary increase was subsequently disapproved be-

cause of her perceived unsatisfactory teaching performance. This court finds *Doyle* dispositive of the second and third *Parratt* requirements. The merit salary increases at issue in this case were by definition discretionary, designed to serve as a reward for an acceptable teaching performance. There merit salary increases were, at best, expectations rather than entitlements, and this court finds that these expectations were not protected property or liberty interests for due process purposes.

■ In addition to failing to meet the second and third requirements of *Parratt,* Dr. Ballard also fails to meet the final *Parratt* requirement—a showing that he was not afforded due process in connection with the decision to award him his less-than-average salary increases. Due process merely requires an opportunity for a hearing appropriate to the nature of the case, *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950), granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). *See also Clark v. Whiting,* 607 F.2d 634, 644–45 (4th Cir.1979) (the amount of due process required in a case where a teacher alleges he was denied a promotion is far less than that necessary in a trial-type situation). Dr. Ballard appealed his salary grievance both within the English department and to a college-level grievance committee. At these hearings Dr. Ballard appeared with counsel, was afforded the right to give testimony and present evidence, and was entitled to a determination based on the record. This court finds that these hearings, and the procedural and substantive rights afforded therein, adequately afforded Dr. Ballard his due process rights.[4]

4. Despite these procedural and substantive safeguards, Dr. Ballard was unsuccessful at both appellate levels. The appellate committees found numerous reasons supporting Dr. Ballard's limited salary increase, including the high attrition rate in Dr. Ballard's English courses, Dr. Ballard's incomplete and nonconstructive grading of student papers, and the numerous student complaints relating to Dr. Ballard's teaching performance. In sum, these appellate committees found as reasonable defendant Dr. Blount's conclusion that Dr. Ballard was performing inadequately and did not deserve the salary increase.

Clinging to the last straw, Dr. Ballard asserts that his less than average annual salary increases violated the Equal Protection Clause of the Fourteenth Amendment. In order to establish a violation of the Equal Protection Clause based upon the *ad hoc* action of state officials, a plaintiff must demonstrate that the action was prompted by some racial, or other class-based, invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *See also Mahaffey v. Kansas Board of Regents,* 562 F.Supp. 887, 890. It is this burden that Dr. Ballard fails to satisfy. At the outset, the court notes that Dr. Ballard does not allege that any other member of the English department faculty is similarly situated for equal protection purposes. Nor does he assert that he is a member of any traditional discrete class (*e.g.,* race, sex, or age) that either was or may be subjected to invidious discrimination. Rather, he attempts to squeeze himself into a putative class of all faculty members working under the merit pay raise system. This attempted classification does violence to the dictate of *Griffin,* since a relaxed classification would result in the very generalized federal tort law that the Supreme Court sought to avoid in *Griffin. See* 403 U.S. at 102, 91 S.Ct. at 1798. Accordingly, this court refuses to permit Dr. Ballard to prosecute his individualized grievance in the guise of the Equal Protection Clause. Additionally, this court finds that the merit pay system is constitutionally permissible, since it is substantially related to a legitimate and important objective of the university. *See Stone v. Board of Regents of the University System of Georgia,* 620 F.2d 526, 529 n. 8 (5th Cir.1980).

### III.  SUMMARY

In summary the court GRANTS the defendants' motion for summary judgment.