James D. THOMAS, Ph.D., Plaintiff,

v.

David J. DEVRIES, Ph.D.,
et al., Defendants.

Civ. A. No. 91–435–4–MAC (DF).

United States District Court,
M.D. Georgia,
Macon Division.

Oct. 19, 1993.

H. Christopher Coates, Milledgeville, GA, for plaintiff.

William W. Calhoun, Atlanta, GA, for defendants David J. Devries, Ph.D., Individually and in His Official Capacity as Chairman of Dept. of Mathematics and Computer Science of Georgia College, Thomas F. Armstrong, Ph.D., Individually and in His Official Capacity as Dean of School of Arts and Sciences of Georgia College, Georgia College of University System of Georgia, Bd. of Regents of University System of Georgia.

## ORDER

FITZPATRICK, District Judge.

■ Before the court is a motion for summary judgment filed on behalf of all defendants in this case. For purposes of this motion all reasonable doubts about the facts are resolved in favor of the non-moving party. *Warrior Tombigbee Transport Co., Inc. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983).

James D. Thomas was an associate professor of math and statistics at Georgia College. Georgia College is a unit of the University System of Georgia operated by the Board of Regents as an agency of the State of Georgia. (Defendant's Statement of Material Facts at 1). Mr. Thomas was given a one-year teaching contract for the 1987–88 academic year, and this one-year contract was repeatedly renewed until March 1990, when he was informed that his employment would terminate after the 1990–91 school year ended. (Plaintiff's Brief in Response at 2–3).

The decision to release Mr. Thomas was made after he approached Dean Thomas Armstrong with allegations that David Devries, Chairman of the Department of Math and Computer Sciences, eavesdropped upon Mr. Thomas' telephone conversations. *Id.* at 4–5. Before the eavesdropping allegation David Devries was pleased with Mr. Thomas' performance and intended to renew his teaching contract. *Id.* at 5–9. After the

eavesdropping accusation David Devries gave Mr. Thomas a poor performance evaluation allegedly as a pretext for a retaliatory dismissal. *Id.* at 9–17.

By approaching Mr. Armstrong about the eavesdropping Mr. Thomas initiated a grievance in accordance with the *Georgia College Faculty Handbook. Id.* at 5. Mr. Devries' vindictive action violated a non-retaliatory clause located within the College's grievance procedure, *Id.* at 3, so after learning that his contract was not renewed Mr. Thomas filed another grievance that was later dismissed on the advice of counsel. *Id.* at 26. Instead of relying upon the college's grievance procedure Mr. Thomas filed this complaint.

Mr. Thomas originally alleged violations of First Amendment rights and substantive and procedural due process rights guaranteed by the Fourteenth Amendment. After the defendants' motion for summary judgment was filed Mr. Thomas voluntarily dismissed his First Amendment claim, but he continues to pray for equitable relief and damages in accordance with 42 U.S.C. § 1983 for deprivation of liberty and property interests. It is an analysis of the validity of these due process claims that now demands the court's attention.

## CONCLUSIONS OF LAW

■ Summary judgment is proper "if ... there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party may provide affirmative evidence of the non-moving party's *inability to prove its case at trial,* and summary judgment is mandated if a party cannot establish the existence of essential elements that they carry the burden of proving at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In the present case Eleventh Amendment immunities prevent plaintiff from reaching these essential elements. Georgia College and the Board of Regents of the University System of Georgia are named as defendants, but "The Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state ei-

ther consents to suit or waives its Eleventh Amendment immunity." *Stevens v. Gay,* 864 F.2d 113, 114 (11th Cir.1989) (citing *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984). Since the state has not consented or waived immunity, and since Georgia College and the Regents of the University System are state entities to which *Stevens* applies, a § 1983 action against these defendants may not be entertained in federal court.

██ Besides the state agencies named in the complaint, plaintiff also identifies David Devries and Thomas Armstrong as defendants to this suit in their official capacities. While the Eleventh Amendment does not insulate state employees acting in their official capacities from prospective injunctive relief, 864 F.2d at 114 (citing *Edelman v. Jordan,* 415 U.S. 651, 664–71, 94 S.Ct. 1347, 1356–60, 39 L.Ed.2d 662 (1974)), nor does it preclude liability for ancillary costs associated with that relief, 864 F.2d at 114 (citing *Kentucky v. Graham,* 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985) (citing *Edelman,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58)), any injunctive remedy imposed upon defendants operating in their official capacity must be "designed to end a continuing violation of federal law...." *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986). In the present case there is no continuing violation that needs be addressed. The violation, if any, occurred at the time that the defendants committed the retaliatory act that initiated this action, and once plaintiff's contract was terminated the violation was complete. Plaintiff argues that there is an ongoing constitutional violation because his "termination of employment at Georgia College continues to the present and will continue in the future unless reinstatement relief is granted." (Plaintiff's Supplemental Brief at 9). To paraphrase plaintiff: the end of his employment is continuing, or the cessation of his job constantly renews itself. These statements are not convincing, and the confusion probably derives from plaintiff's erroneous association of the constitutional violation with its tangential harm. The constitutional violation ended when plaintiff's employment was terminated, but the harm caused by the constitutional violation persists. Unfortunately the court is without jurisdiction to provide injunctive relief from harms associated with past constitutional violations, *see, e.g., Coney v. Department of Human Resources,* 787 F.Supp. 1434, 1440–41 (M.D.Ga.1992), so these defendants are immune from liability in their official capacities.

The court takes its position on this particular issue with reluctance and only after the most careful consideration. Plaintiff's case proves that the line between suits permitted by *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and those prohibited by the Eleventh Amendment will often be indistinct. *See also* 478 U.S. at 278, 106 S.Ct. at 2940.

Other courts confronting this issue have reached different conclusions, but these cases are distinguishable. *Elliott v. Hinds,* 786 F.2d 298 (7th Cir.1986), is a pre-*Papasan* decision which held that wrongful discharge of a tenured employee is an ongoing violation. *Melo v. Hafer,* 912 F.2d 628 (3d Cir. 1990), is a post-*Papasan* decision that does not reference or in any way distinguish the *Papasan* holding. *Dube v. State University of New York,* 900 F.2d 587 (2d Cir.1990), cites *Papasan,* but only for a proposition unrelated to the issue of whether a wrongful discharge is an ongoing constitutional violation. *Coakley v. Welch,* 877 F.2d 304 (4th Cir.1989), and *Ezzell v. Board of Regents of The University System of Georgia,* 838 F.2d 1569 (11th Cir.1988), found ongoing violations after wrongful discharges, but the ongoing violations depended upon the continued existence of state regulations which essentially authorized the wrongful discharges. In short, the court finds no case which helps to remove plaintiff's case from the limitations imposed by *Papasan.*

██ Neither does the Fourteenth Amendment supersede the Eleventh Amendment in actions alleging § 1983. Section five of the Fourteenth Amendment authorizes Congress to override Eleventh Amendment immunity to the extent necessary to enforce legislation designed to implement the substantive provisions of the Fourteenth Amendment, but "it

is well settled that § 1983 does not constitute an exercise of that authority." 900 F.2d at 594 (citing *Quern v. Jordan,* 440 U.S. 332, 340–42, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979).

Even if the constitutional violation were ongoing and injunctive relief otherwise available, plaintiff's prayer includes monetary damages that do not fit the description of ancillary costs associated with injunctive relief. Ancillary costs cannot be "in practical effect indistinguishable . . . from an award of damages against the state." 415 U.S. at 668, 94 S.Ct. at 1358. To maintain a distinction between injunctive relief and damages, plaintiff's prayer for relief should not be measurable "in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.* The complaint in the instant action prays for back pay and benefits as a form of equitable relief, but *Edelman* categorizes this equitable request as a disguised claim for damages that are never recoverable against state employees functioning in their official capacities.

Official capacities aside, David Devries and Thomas Armstrong are further named as defendants in their individual capacities. Again the Eleventh Amendment cloaks them in immunity. Suits against state employees in their individual capacities may be subject to qualified or good faith immunity, and such defendants are shielded from liability insofar as their conduct does not violate " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Busby v. City of Orlando,* 931 F.2d 764, 773 (11th Cir.1991) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2740, 73 L.Ed.2d 396 (1982)). "This standard shields all government officials except those who either are plainly incompetent or who knowingly violate the law." 931 F.2d at 773 (citing *Nicholson v. Georgia Department of Human Resources,* 918 F.2d 145, 146 (11th Cir.1990) (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Stewart v. Baldwin County Board of Education,* 908 F.2d 1499, 1503 (11th Cir.1990)). The defendant is entitled to immunity so long as she could have reasonably thought that her acts were consistent with the rights that she is alleged to have violated. 931 F.2d at 773 (citing *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). The burden is on the plaintiff to show that the defendants violated clearly established constitutional rights. 931 F.2d at 773 (citing *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)).

Meeting the exacting burden mandated by *Busby* is impossible for plaintiff. After voluntarily dismissing First Amendment claims his complaint consists of procedural and substantive violations of due process, and if there was an encroachment upon due process it was not violative of clearly established rights.

Procedural due process claims raised in this case fail because, although one may file a § 1983 action without exhausting state remedies, *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), a § 1983 action cannot be based upon a violation of procedural due process rights without first availing oneself of facially adequate due process mechanisms already in place. *Faucher v. Rodziewicz,* 891 F.2d 864, 870 (11th Cir.1990); *Lewis v. Hillsborough Transit Authority,* 726 F.2d 664, 667 (11th Cir.1983), *cert. denied,* 469 U.S. 822 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). To maintain a claim for deprivation of procedural due process rights the Supreme Court outlines four prerequisites, the fourth of which is that the deprivation must have occurred without due process of law. *Ballard v. Blount,* 581 F.Supp. 160, 165 (N.D.Ga.1983) (citing *Parratt v. Taylor,* 451 U.S. 527, 535–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981)). The amount of process due is minimal, and merely requires an opportunity for a hearing appropriate to the nature of the case. 581 F.Supp. at 165 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). The grievance mechanism at Georgia College afforded plaintiff procedural due process, and plaintiff's decision not to participate in this process precludes his procedural due process deprivation claim.

Plaintiff submits that his decision to dismiss his grievance was designed to preserve all factual issues for this court because, had an administrative board ruled adversely on his claim, the defendants would have formulated a preclusion argument to assert that the facts were no longer in dispute when the case finally reached this court. (Plaintiff's Supplemental Brief at 4). The court, however, cannot make decisions on the basis of what might have been; rather, the court must decide cases on the basis of the facts as they exist. No one can say what would have happened had plaintiff utilized the procedural due process mechanisms available to him, and neither can anyone know what arguments the defendants might have forwarded in response to plaintiff's reliance upon existing procedural mechanisms. Speculation will not alter the fact that the court cannot entertain plaintiff's procedural due process claim unless the alleged deprivation occurred without available procedural due process. 581 F.Supp. at 165. Plaintiff suffered a deprivation of procedural due process, but it was only because he unilaterally dismissed his grievance.

 Substantive due process claims in this action, whether based upon a liberty or property interest, also fall short of the *Busby* standard for piercing qualified immunity. Plaintiff can claim no deprivation of a liberty interest since he does not allege that the defendants made public a false statement, and there is nothing in the record intimating that the defendants' decision to release plaintiff from future employment stigmatized him or otherwise interfered with his ability to freely pursue his chosen profession in another locale. Without such evidence plaintiff's complaint does not meet the elements of a deprivation of liberty interest as set forth in *Buxton v. City of Plant City, Florida*, 871 F.2d 1037 (11th Cir.1989). These elements are: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing. 871 F.2d at 1042–43.

Plaintiff urges the court to rely upon certain prisoners' rights cases finding a depriva-tion of liberty interests when there has been retaliation for the use of grievance procedures, *see, e.g., Jackson v. Cain*, 864 F.2d 1235 (5th Cir.1989), but plaintiff's reliance upon these cases is misplaced. Retaliation for using grievance procedures in a prison environment affects liberty interests because it may delay a prisoner's release from detention or affect freedom of movement while within the prison facility. *Cf.,* 864 F.2d at 1251. *Jackson* and similar cases do not persuade the court to carve a new niche for claims of deprivation of liberty interests among persons not in confinement, particularly when the principles enumerated in *Buxton* provide clear guidance to the court.

 *Busby* also preserves qualified immunity when there is no violation of a clearly defined property interests associated with substantive due process, and in the present case there is no clearly defined property interest that could have been violated. Plaintiff posits that a non-retaliatory clause in the grievance procedure created a viable property interest that was violated by his termination because he was entitled to use the grievance procedure without jeopardizing his employment. (Plaintiff's Brief In Response at 18). While this position suggests a reasonable extension of already existing legal principles, it does not reflect the law as it currently exists in this jurisdiction. Indeed, only two cases from foreign jurisdictions were cited to support this theory, and even these cases do not explicitly state that one may recover for retaliation in utilizing a grievance procedure. *See Wright v. Manatee County*, 717 F.Supp. 1493, 1497–98 (M.D.Fla.1989); *Cain v. Larson*, 879 F.2d 1424, 1427 & 1427 n. 2 (7th Cir.1989). When a theory of recovery is as tenuous as that presently offered the court cannot expect state employees to be cognizant of potential constitutional violations. Consequently the *Busby* standard for piercing qualified immunity is not met. Plaintiff's property interest claim is no more viable than his liberty interest claim, so there can be no violation of a clearly defined constitutional interest that would allow the court to take jurisdiction over the substantive due process aspects of this action.

**404**

Because plaintiff's allegations do not puncture Eleventh Amendment immunity from any angle, whether it be claims against the state or its employees in their official or individual capacities, the court has no jurisdiction to determine the merits of his complaint. Accordingly, defendants' motion for summary judgment must be **GRANTED.**

SO ORDERED.