Patrice D. WILLIAMS, Plaintiff,

v.

ALABAMA STATE UNIVERSITY,
et al., Defendants.

Civil Action No. 94–A–434–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 23, 1997.

Charles Michael Quinn, Rocco Calamusa, Jr., Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Plaintiff.

Solomon S. Seay, Jr., Montgomery, AL, Mark Englehart, Tyrone Carlton Means, Kenneth Lamar Thomas, Thomas, Means & Gillis, P.C., Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the Court on a Motion for Summary Judgment filed by Defendants T. Clifford Bibb ("Bibb"), Dr. Roosevelt Steptoe ("Steptoe"), and Dr. Alma S. Freeman ("Freeman") in their official capacities as administrators of Alabama State University (collectively the "Administrator Defendants"); and joined by Defendants Joe L. Reed, Frankye H. Underwood, Richard Arrington, Jr., B. Maxine Coley, James C. Cox, LaRue W. Harding, Fob James, Jr., Toreatha M. Johnson, Larry H. Keener, Patsy B. Tucker and Donald V. Watkins, in their official capacities as Trustees of Alabama State University (collectively the "Trustee Defendants"). *See Motion to Dismiss of Members of Board of Trustees at 2 fn. 2 (July 25, 1997) (joining in Administrator Defendants' Motion for Summary Judgment).*

On April 13, 1994, Patrice D. Williams ("Williams"), filed this action under 42 U.S.C. § 1983 alleging violations of her First Amendment rights to free speech, as applied to the states via the Fourteenth Amendment. Specifically, Williams alleges that she criticized a textbook written by Bibb (and other professors) and instigated a debate concerning major errors in the book and its appropriateness as a teaching tool. Williams further alleges that, as a result, her hours were reduced and that the tenure committee, of which Bibb was the chairman, denied Williams' application for tenure, resulting in her termination.

In the original complaint and an amended complaint of October 26, 1994, Williams named as Defendants: Bibb in his personal and official capacities; Steptoe in his personal and official capacities; Freeman in her personal and official capacities; Alabama State University; and the Board of Trustees of Alabama State University as an entity. As a result of prior orders of this court, and an opinion of the Eleventh Circuit, *Williams v. Alabama St. Univ.*, 102 F.3d 1179 (11th Cir.1997), only Williams' claims for equitable relief against Bibb, Steptoe, and Freeman, in their official capacities, remain from the original complaint and its amendment. Williams by a second amended complaint of May 9, 1997, named the individual members of the Board of Trustees of ASU—Reed, Underwood, Arrington, Coley, Cox, Harding, James, Johnson, Keener, Tucker and Watkins—as Defendants in their official capacities, for purposes of relief

Defendants contend that they are entitled to summary judgment because the Plaintiff cannot establish a prima facie case of a free speech violation. Specifically, Defendants argue that Plaintiff was not speaking about a matter of public concern; her interests were outweighed by Defendants' interests in the efficient operation of their place of employment; and Plaintiff's speech was not a substantial motivating factor in the denial of tenure. Further, Defendants contend that the evidence is undisputed that Defendants would have taken the same action even in the absence of any protected speech.

For the reasons stated below, the court finds that Defendants' Motion for Summary Judgment is due to be GRANTED.

## II. STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof *Id.* at 322–324, 106 S.Ct. at 2552–53.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial").

What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of material fact "is 'genuine'... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989).

The evidence presented by the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. FACTS

The facts construed in the light most favorable to the non-movant Williams are:

Alabama State University ("ASU") hired Patrice D. Williams in 1980 as an instructor of English for the Department of Advancement Studies of University College. ASU employed Williams under a temporary contract which was renewed every year for the next four years. In 1984, Williams became a probationary employee, and ASU gave her a probationary contract. In 1986, Williams took a two year leave of absence in order to pursue a doctorate. In 1988, Williams began work at ASU again as an instructor of English for the Department of Advancement Studies of University College. Williams was under a probationary contract with ASU, and was on a tenure track. *See Declaration of Patrice D. Williams ("Plaintiff's Declaration").*

At all times relevant to this suit, Defendants Bibb, Steptoe, and Freeman served in administrative positions at ASU. Bibb served as Chair of the Department in which Williams worked, the Department of Advancement Studies. Williams was also Chair of the Tenure Committee for the Department. *Id.* Steptoe was ASU's Vice Presi-

dent for Academic Affairs. Freeman was Dean of ASU's University College.

In 1990, Bibb and six other members of the faculty authored a grammar textbook, *The Wise Writer. Affidavit of T. Clifford Bibb ("Bibb Aff")* at 2. The book was written in less than a year and at least one faculty member declined to participate in the writing because of the pace of production. *Deposition of T. Clifford Bibb ("Bibb Depo.") 147:8–16.* The preliminary edition of this textbook was made a required text for ASU students in two English classes in the Fall of 1990. *Bibb Depo. 150:9—151:5.* Students were required to pay $ 48 per copy of the book and its accompanying workbook, *Plaintiff's Declaration,* and the authors, including Bibb, received royalties therefrom, *Bibb Depo. 151:12—14.* Faculty members were not allowed to review the book prior to it being made a required text for the students. *Bibb Depo. 154:8–19.*

Williams alleges that this textbook contained numerous substantive grammatical mistakes, and that requiring the students to purchase the preliminary copy was in violation of certain University regulations. *Plaintiff's Declaration.* Defendants Freeman, Steptoe, and Bibb, in fact admitted that the errors in the preliminary edition are more than typographical. *Freeman Depo. 128.10—129: 15 (characterizing errors as serious and beyond typographical); Steptoe Depo. 76:23—77:6 ("embarrassing"); Bibb Depo. 161:19—163:1 ("grammatical errors;" "syntax errors;" beyond typographical).* Williams expressed her concerns about the textbook to Bibb, and to other faculty members and university staff. *Plaintiff's Declaration.* She discussed problems with the book on an almost daily basis with one faculty member, and made her views known to several other faculty members and staff. *Id.* Williams states in her Declaration that her "objection to the book became known to the faculty and staff within the department." *Id.* Bibb reprimanded her at a faculty meeting for allegedly discussing the book with her students; she denies, however, that she ever "complained to [her] students about the textbook." *Id.* Williams states that the "purpose of [her] speech was to protect the students and the integrity of the University." *Id.*

Williams also complained after *The Wise Writer* was published in its final form. *Id.* She was concerned that students who had already purchased the preliminary edition were now being required to purchase the final edition. *Id.* Her complaints were made to Bibb, but he took no action. *Id.* Defendants assert that most of the errors of the preliminary edition were corrected when the book was published in its official form. *Bibb Aff at 3.* Plaintiff has not countered this assertion.

In the 1990–91 school year, Williams applied for a promotion to the position of Assistant Professor and for tenure. *Id.* Williams withdrew her request for tenure after it was determined that it was premature. *Steptoe Aff. at 10.* Williams' promotion was denied. *Plaintiff's Declaration.* After an initial denial which was based on a miscalculation of her scores, Defendants denied Williams' request for promotion to Assistant Professor citing "procedural and substantive evaluation reasons." *Plaintiff's Declaration; Steptoe Aff at 6–7.*

Williams again applied for promotion to Assistant Professor and for tenure in 1991–92. *Plaintiff's Declaration.* In May 1992, Defendants promoted Williams to the position of Assistant Professor. *Steptoe Aff. 7.* Her request for tenure was, however, denied. *Steptoe Aff. at 10.* Bibb, Freeman, and Steptoe were in the chain of authorities who approved the denial of tenure to Williams. *Steptoe Aff. 2.* Bibb, in fact, headed up the tenure committee. *Plaintiff's Declaration.* Williams contends that Bibb violated University policy by meeting with committee members individually, and that the committee violated policy by meeting as a whole. *Plaintiff's Declaration.* Additionally, a faculty member who had supported Williams was apparently not placed on the committee by Bibb in 1991–92. *Bibb Depo. 129:20—130:20.* University policies state that all tenured faculty of a department should be on the tenure committee. *Faculty Handbook, Chapter Three.* None of the members of either tenure committee, other than Bibb, were authors of *The Wise Writer.* Bibb Aff at 2, 4 & 6. As a result of the denial of her tenure request, Williams worked at ASU under a temporary contract

until May 1993 when she received a termination. *Plaintiff's Declaration; Steptoe Aff. at 11–12.*

Williams contends that she was qualified to receive tenure, but that Defendants denied her request because of her criticism of the grammar textbook written by Bibb. *Plaintiff's Declaration.* Williams was told that she lacked qualifications in Research and Creativity, and that her published article was not in a proper, "refereed" journal. *Plaintiff's Declaration.* The faculty evaluation plan which was in effect at the time of Williams' review did not state a requirement of publication in a "refereed" journal, although Bibb insists that this qualification was known by word of mouth and by implication. *Bibb Depo. 87:21—90:16.* Plaintiff also asserts that she is more qualified than other applicants who received tenure, and submitted copies of those applicant's files.

## IV.  DISCUSSION

Plaintiff claims that the Defendants violated her rights to free speech guaranteed by the First Amendment of the United States Constitution, and enforced against the states via the Fourteenth Amendment. When an individual seeks redress in the courts for a violation of her Constitutional rights by state officials, she may not sue directly under the Constitution, but makes her claim under 42 U.S.C. § 1983.

▮ A state employer may not retaliate against a state employee for engaging in constitutionally protected speech. *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). A claim by a public employee that she was punished for exercising her right to freedom of speech requires a court to conduct a four part inquiry. *Harris v. Shelby Co. Bd. of Ed.,* 99 F.3d 1078, 1086 (11th Cir.1996). First, the court must determine whether the alleged speech implicated a matter of public concern. *See Watkins v. Bowden,* 105 F.3d 1344, 1352–53 (11th Cir.1997) (citation omitted). If so, the court must weigh the employee's First Amendment interest against the interest of the public employer. *Id.* at 1352; *Pickering v. Bd. of Ed.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968) (the court must balance "an employee's interest as a citizen in commenting on matters of public concern ... against the state's interest as an employer 'in promoting the efficiency of the public services it performs through its employees.' "). If the employee prevails on the balancing test, the fact-finder determines whether the employee's speech was a substantial motivating factor in the employment decision. *Watkins,* 105 F.3d at 1352. Then, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.*

▮ Determining whether the speech is of public concern is a threshold inquiry. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983). It is a question of law to be determined by the court. *Morris v. Crow,* 117 F.3d 449, 456 (11th Cir.1997); *Morales,* 848 F.2d at 1148. As such, it is "readily susceptible to disposition on summary judgment." *Ferrara v. Mills,* 781 F.2d 1508, 1515 (11th Cir.1986). If the Plaintiff's speech "cannot fairly be characterized as constituting speech on a matter of public concern, the inquiry is at an end." *Ferrara* at 1512.

▮ In deciding whether an employee's speech addresses a matter of public concern, the court must look to the content, form, and context of the employee's speech. *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989). Courts "consider whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." *Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993), *cert. denied,* 512 U.S. 1221, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994). In any event, the "First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick v. Myers,* 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983).

▮ In the context of an educational setting, "speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection." *Maples v. Martin,* 858 F.2d 1546, 1552 (11th Cir.1988). A teacher's speech is a matter of public concern, however, when it "directly affects the public's perception of the quality of education in a given academic system." *Id.* at 1553.

In the case at hand, Plaintiff's statements of purported public interest all concern her objections to the content of *The Wise Writer* and ASU's use of *The Wise Writer*. Defendants and Plaintiff have both acknowledged that the problems with the text itself concern the *preliminary* edition. Plaintiff notes, and the court acknowledges, that this problem-ridden first edition was sold to students, when there was still editing and a final printing to be accomplished. While the quality of textbooks that students use could in some cases affect the public's perception of the quality of education at a public university, Plaintiff does not adequately explain why her speech regarding the preliminary edition of this textbook, even an edition which is sold to students, is a matter of public concern.

Rather, Williams' speech regarding the preliminary edition is entirely consistent with her role as an employee of the Department of Advancement Studies. She is concerned about the textbook that her students will be using. She is concerned about the text from which she will be teaching. She raises those concerns at a faculty meeting and among faculty and staff. Using texts and selecting texts are an everyday part of the job of an instructor or professor, and it is not unusual that an instructor would be concerned about her textbook.[1]

■ This court finds that Williams' speech regarding the textbook does not, as a matter of its content, raise issues of public concern. Rather, the speech may reflect issues of either personal grievance, i.e. Dr. Williams' dissatisfaction with teaching from this book, or, perhaps, an intra-university dispute over the best choice for a textbook for ASU students. Even Williams' speech regarding the requirement that the students purchase a second, final copy when it became available cannot be construed as more than an intra-University dispute about the best choice of a text (i.e. is the final edition so superior to the preliminary one that it would be best to require the students to purchase the final edition?).

■■ The lack of an issue of public concern is especially evident when viewed in light of the form and context of Williams' speech. None of the comments made by the Plaintiff were voiced outside of her department at ASU. Williams, in fact, states in her declaration that her "objection to the book became known to the *faculty and staff within the department*" (emphasis by Court). Williams even flatly denies that she ever "complained to [her] students about the textbook." While this lack of publication outside of her department is not dispositive; it is a factor which the Eleventh Circuit has said may be taken into account. *Morgan v. Ford,* 6 F.3d 750, 754 and 754 n. 5 (11th Cir.1993), cert. den. 512 U.S. 1221, 114 S.Ct. 2708, 129 L.Ed.2d 836 (U.S.1994); *Kurtz,* 855 F.2d at 727. It is also a factor which this Court finds revealing, demonstrating that Williams was acting in her role as employee and not as a citizen. Williams' assertion of concern for the students is weakened by the fact that she took no steps to inform the students about her concerns, and took no steps outside of her department to enforce the University regulations regarding the choice of this text. *See Kurtz,* 855 F.2d at 729.

Plaintiff's attorney construes his clients' confinement of her speech to the Department as an "initial response." This assertion is flatly contradicted, however, by the Plaintiff's own facts. It is undisputed that Williams' concerns began in 1990, and that she was not terminated until 1993. That she did not raise these issues outside of her department at anytime within those three years belies the assertion that she was merely acting on an "initial response." The court must find, therefore, that Williams' concerns are not public concerns because she did not raise them within the public sphere.

Plaintiff points out in her brief that the Defendants have disputed the number of times that Williams spoke up about the textbook. While Plaintiff accurately notes this dispute, Plaintiff is wrong when she insists that this dispute prevents this court from

---

1. The fact that corrections were made to the textbook by action within the department also speaks to a conclusion that these are not matters of public concern. *See Ferrara,* 781 F.2d at 1516 (noting that administration had abolished scheduling procedure to which Plaintiff objected in discussion of why there was no public concern at issue), citing *Ballard,* 581 F.Supp. at 164.

granting summary judgment. The court can accept the assertions of Williams regarding the number of times that she spoke up about the textbook, and still find that as a matter of law her speech did not relate to matters of public concern, because of its content, form, and context. That an issue is discussed often does not necessarily mean that the issue is of public concern. More must be considered.

▮ The court rejects any contention that Williams' assertion of a motive to serve the public's interest raises a fact question so as to prevent summary judgment. The court notes, as did the Eleventh Circuit in rejecting this assertion in *Ferrara*, that the issue of whether the Plaintiff's speech relates to a matter of public concern is a "question of law which [the courts] must answer in light of the subjective factors of the content, form, and context of the speech," and not a question of fact. *Ferrara*, 781 F.2d at 1515 (citing to *Connick*, 461 U.S. at 147–48 and 148 n. 7, 103 S.Ct. at 1690–91). Plaintiff states that the "purpose of [her] speech was to protect the students and the integrity of the University." Because Plaintiff's speech was confined within her department and limited to issues concerning the textbook, the court may draw no conclusion other than that the Plaintiff thought her speech would eventually benefit the public and students. Plaintiff is raising, in effect, a derivative public concern argument.

Derivative public concern arguments have been rejected by courts in this circuit. *See Ballard v. Blount*, 581 F.Supp. 160 (N.D.Ga. 1983), *aff'd*, 734 F.2d 1480 (11th Cir.) *cert, denied*, 469 U.S. 1086, 105 S.Ct. 590, 83 L.Ed.2d 700 (1984). In *Ballard*, the plaintiff argued that his speech regarding a proposed freshman English syllabus raised public concerns since the choice of a certain syllabus would affect the students. The court rejected his arguments, reasoning that "[t]aken to its logical conclusion, the plaintiff's argument means that any time a person's speech will have an affect on the public, regardless of how small or unlikely that effect may be, that speech relates to a matter of public concern."

*Id.* at 164. The court went on to note that this had been a concern of the U.S. Supreme Court in *Connick*, but the Supreme Court "wisely rejected this identical argument." *Id.*

Public employees within the Eleventh Circuit simply will not be allowed to "transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir.1986) (denying that public teacher's interest in matters of scheduling and teacher hiring were of public concern, even where teacher had taken grievance to county school board).

The choice of a textbook for use in ASU classrooms is a decision for the appropriate ASU authorities. Williams disagreed with this choice of textbook, and was perhaps treated unfairly because of her disagreement. That she was treated unfairly does not mean, however, that she was treated unconstitutionally. *See Ferrara*, 781 F.2d at 1516. To be treated unconstitutionally, Plaintiff must have been speaking about a matter of public concern. This is not borne out by the facts and the law. Rather, the facts and the law reflect that her speech was an "employee grievance concerning internal school policy." *Ferrara*, 781 F.2d at 1515. Because a personal grievance does not rise to the level of a public concern merely because the plaintiff claims that the public has an interest in the way public institutions are run, the court finds that the Plaintiff's evidence does not establish that she spoke on a matter of public concern. *Id.*

Because there is no speech about an issue of public concern, the court's analysis need proceed no further. "If the employee's speech does not relate to matters of public concern, then the employee has no first amendment interest against which the employer's interest need be weighed." *Ferrara*, 781 F.2d at 1514. Because the Plaintiff has failed to establish that she spoke on a matter of public concern, the Defendants are entitled to judgment as a matter of law.[2]

---

**2.** Plaintiffs assert in their brief that Defendants acknowledged in their respective depositions that Dr. Williams' complaints regarding the book were matters of public concern. Plaintiffs failed, however, to produce the portions of the deposi-

tions which contain these acknowledgments. This failure was as to all three depositions; the court, therefore, will not consider this as evidence. The court notes, however, that even if it

## V. CONCLUSION

The court concludes that because the Plaintiff has failed to demonstrate that there are disputed issues of fact with regard to his federal constitutional claims, the Defendants are entitled to judgment as a matter of law on the Plaintiff's claims under the United States Constitution. Therefore, the Motion for Summary Judgment is due to be GRANTED, and judgment is due to be entered in favor of all Defendants and against the Plaintiff.[3]

did consider these acknowledgments as evidence, any such factual admission would not control this court's opinion. The issue of whether Williams' statements were matters of public concern is a question of law for the court to decide, not a question of fact as to which the parties may make binding stipulations or admissions.

3. Because this decision disposes of all of the Plaintiff's claims on the merits, the court does not find it necessary to address any of the arguments made in the Motion to Dismiss by the Trustee Defendants, and that Motion is DENIED as moot.